UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES MITCHELL, | ) | CASE NO. 3:25-CV-253 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANETTE MALDONADO; and | ) | |
| LIEUTENANT MCLAUGHLIN, | ) | JULY 25, 2025 |
| *Defendants.* | ) | |

**INITIAL REVIEW ORDER**
**RE: CORRECTED THIRD AMENDED COMPLAINT (ECF NO. 50)**

Kari A. Dooley, United States District Judge

Plaintiff, James Mitchell ("Mitchell"), a sentenced inmate at MacDougall-Walker Correctional Institution ("MacDougall CI"), brings this action *pro se* under 42 U.S.C. § 1983 against Defendants Warden Janette Maldonado ("Maldonado") and Lieutenant Mclaughlin[1] ("Mclaughlin"). The original Complaint was brought on behalf of Mitchell and another plaintiff, James Raynor, for alleged constitutional violations that occurred when they were both housed at Garner Correctional Institution ("Garner CI"). On October 21, 2024, the Court dismissed Mitchell's claims against Defendants Mclaughlin and Maldonado without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1). *See* Initial Review Order ("IRO"), ECF No. 19. The Court then *sua sponte* severed Mitchell's claims,[2] *see* ECF No. 39, and on March 4, 2025, Mitchell filed a Corrected Third Amended Complaint ("Corrected TAC") in this case. *See* Corrected TAC, ECF

---

[1] In some allegations, Mitchell refers to this Defendant as Defendant Mclaughlin, and in others, as Defendant Macgaughlin. The Court presumes that this is a scrivener's error, and will refer to this Defendant as Defendant Mclaughlin.

[2] After learning that Plaintiffs Raynor and Mitchell were no longer housed in the same facility, the Court *sua sponte* severed Mitchell and Raynor's claims into two distinct civil actions: Case No. 24-cv-1221 (Raynor), and this case, No. 25-cv-253 (Mitchell). *See* ECF Nos. 39–40. All pleadings and orders that were docketed prior to the claims being severed in Case No. 24-cv-1221, have been docketed in this case.

No. 50.

Liberally construed, the Corrected TAC once again brings claims against Defendants Mclaughlin and Maldonado for: (1) use of excessive force in violation of the Eighth Amendment; (2) deliberate indifference to health and safety in violation of the Eighth Amendment; (3) violations of Mitchell's Fourteenth Amendment substantive and procedural due process rights; and (4) violations of the Fourteenth Amendment Equal Protection Clause.  *See generally* Corrected TAC at 20.  The Corrected TAC also purports to bring state law constitutional and tort claims, and seeks compensatory and punitive damages.  *Id*. at 50–51.  For the reasons set forth herein, the Corrected TAC shall **PROCEED** against Defendant Mclaughlin on Mitchell's Eighth Amendment excessive force and deliberate indifference to health and safety claims.  All other claims are **DISMISSED** pursuant to Section 1915A(b)(1).

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.[3]  28 U.S.C. § 1915A(a)–(b).  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the

---

[3]  The Court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search of the Connecticut Department of Correction inmate information shows that Plaintiff was sentenced on October 12, 2005, and is currently housed at MacDougall CI. DOC Inmate Information, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=253732 (last visited July 24, 2025).

claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**[4]

The Court has considered all of the allegations set forth in the Corrected TAC and recites herein only those facts pertinent to its initial review.

On February 20, 2024, while Mitchell was housed at Garner CI, "the facility began a 'shakedown' and a property compliance search." Corrected TAC at 1. "[Mitchell] and his cell mate were strip-searched inside their cell by a correctional officer." *Id*. at ¶ 2. Once the search was completed, the correctional officer began to attempt to handcuff Mitchell and his cellmate. *Id.* at ¶ 3. Defendant Mclaughlin then appeared and ordered the correctional officer to handcuff everyone from behind, to which Mitchell replied, "[I]'m too big to be handcuffed from behind." *Id*. Defendant Mclaughlin informed Mitchell that "all inmates had to be handcuffed from behind." *Id*. Defendant Mclaughlin then offered a "double handcuff option" to Mitchell's cellmate, but not Mitchell. *Id*. Mitchell and his cellmate were handcuffed from behind and separately escorted to the unit dayroom. *Id.* at ¶ 4.

Once inside, Mitchell was secured along with the other inmates who were also handcuffed from behind, except for one inmate. *Id*. There was only one chair in the unit dayroom, so Mitchell

---

[4] Because "[t]he Second Circuit has long held that an amended complaint completely replaces the original complaint," the Court will not consider allegations from Plaintiff's original Complaint in considering the factual basis for his claims. *Jordan v. Chiaroo*, No. 3:24-CV-204 (VAB), 2024 WL 3925375, at *3 (D. Conn. Aug. 23, 2024) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)) (holding that an amended complaint completely replaces the original complaint)); *see also Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint").

was forced to stand. *Id*. After some time had passed, another officer entered the unit, and Mitchell "complained of his hands turning purple and being in pain[,]" so the senior officer added an additional pair of handcuffs. *Id*. at ¶ 5. The senior officer advised that "he could not switch[] everyone, due to avoiding any issues with [D]efendant Mclaughlin." *Id*. Mitchell claims that he "and other inmates complained of pain[,] and the discomfort and pain was visible to the officer causing the officer to intervene." *Id*. at ¶ 6.

After some time had passed, "a facility nurse was summoned by the officer on watch duty to check on the other inmates and [Mitchell] due to the visible pain and hands turning purple from being handcuffed for a long period of time." *Id*. at ¶ 7. However, the nurse did not check on Mitchell. *Id*. Mitchell claims that Defendant McLaughlin did not check on him at any time, nor did he check on "any other inmate in the dayroom despite knowing that [he] was standing handcuffed from behind for a considerable amount of time." *Id*. at ¶ 8.

After Mitchell and his cellmate's cell search was complete, his cellmate returned to their cell for a property compliance check, which took at least an additional hour to complete." *Id*. at ¶ 9. "[Mitchell] was left standing and handcuffed from behind in the dayroom during the time [his] cellmate completed [the] property compliance check." *Id*. at ¶ 10. "[His] pain got worse in his back, shoulders[,] and wrists [from] standing up handcuffed from behind." *Id*. at ¶ 11.

After about three hours had passed, Mitchell was escorted back to his assigned cell. *Id*. at ¶ 12. Prior to entering his cell, he spoke to Defendant Mclaughlin and told him he wanted to complete a "Page One Incident Report. . . ." *Id*. Defendant Mclaughlin asked, "why[,]" and Mitchell responded, "because you left me standing handcuffed from behind for three hours in pain." *Id*. at ¶¶ 11, 13. Defendant McLaughlin asked Mitchell why he didn't say anything to

him[,]" to which Mitchell stated, "[I] did and . . . it's on you to check on my health and safety." *Id*. Defendant Mclaughlin refused to complete the "Page One Incident Report." *Id*. at ¶ 13. Mitchell then requested to see the medical staff and went into his assigned cell where his handcuffs were removed so a property compliance check could be completed. *Id*.

Shortly after Mitchell had returned to his cell, he and his cellmate saw a facility nurse. *Id*. at ¶ 14. They informed the nurse of "the issues and pain" and were treated with pain medication and ice packs[,] but the nurse could not evaluate them because of the facility lockdown. *Id*. Mitchell was treated by the facility nurses "with medications and ice packs daily for about a week during the facility lockdown." *Id*. at ¶ 15. He began the "administrative remedy process and research of DOC's policy . . . [and] discovered that there is no DOC policy authorizing the use of handcuffs and/or restraints during routine facility shakedowns." *Id*. at ¶¶ 16–17. Mitchell claims that DOC policy states that "an inmate cannot be held in handcuff restraints for more than one hour, and not for facility shakedowns."[5] *Id*. at ¶ 19.

Subsequently, Mitchell was seen by medical staff for his "pain/injury" and x-rays were ordered, which showed issues with his back, a bone spur, spaces in his spine discs, and a curved spinal cord. *Id*. at ¶¶ 23–24. Mitchell had been unaware that these medical issues existed. *Id*. at ¶ 24. He was later seen by the facility doctor and staff and prescribed more pain medication and a wrist brace device for ligament damage. *Id*. at ¶ 25.

---

[5] It does not appear that Mitchell is attempting to bring a claim against Defendants for violations of DOC administrative directives. Even so, it is well-settled that "[a] violation of or failure to follow an administrative directive does not state a claim of a violation of a federal or constitutionally protected right." *Jones v. Rodi*, No. 3:19-CV-1866 (VAB), 2020 WL 1820816, at **7–8 (D. Conn. Apr. 10, 2020); *see also Whitaker v. Evans*, No. 3:19-CV-1129 (MPS), 2019 WL 6700188, at *3 (D. Conn. Dec. 9, 2019) ("[D]efendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.") (quoting *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019)).

Eventually, Mitchell was transferred to MacDougall CI, and he was seen by an orthopedic doctor who told him that his "back injuries were exacerbated by being handcuffed from behind for hours while standing. . . ." *Id*. at ¶¶ 27–28.  He was prescribed stronger pain medication and other medication for his back and ligament issues to his wrist.  *Id*. at ¶ 28.  Mitchell claims that he "discovered that the serious pains he was experiencing while being handcuffed from behind[,] [while] standing in a secured area[,] [were] part of a pre-existing injury and a new injury[,] which was caused as a result of the use of restraints . . . ." *Id*. at ¶ 50.

Mitchell claims that Defendant Mclaughlin treated him "differently from at least two similarly situated persons at [Garner CI] by leaving [him] handcuffed from the behind and different from all other inmates in other [C]onnecticut state facilities. . . ." *Id*. at ¶ 20.  Moreover, he claims that Defendant Mclaughlin failed to protect his health and safety.  *Id*. at ¶ 21.  He alleges that Defendant Mclaughlin "was the only supervisor in the unit on this day and controlled the functions and decisions made during the shakedown, [and] all staff involved with handcuffing inmates pursuant to the shakedown followed the defendant['] s orders and directions." *Id*. at ¶ 38.  Mitchell avers that "[h]andcuffing an inmate from behind for a long period of time can only cause injuries and pain and does not have institutional reasons to maintain discipline or security."  *Id*. at ¶ 37.  Mitchell also states that he "was not involved in any incidents[,] was in a secured room with facility staff . . .[,] [was] not on any restrictive status [or] administrative detention[,] [and] ha[d] not received a DOC disciplinary report for any type of misconduct for almost fifteen years." *Id*. at ¶¶ 37, 48.

As for Defendant Maldonado, Mitchell does not allege that he interacted with her on the day he was handcuffed, but instead claims that Defendant Maldonado was "aware that restraints

via handcuffs during facility shakedowns are not done, authorized[,] or used at any other

[C]onnecticut facilities." *Id*. at ¶ 29.  Mitchell also claims that Defendant Maldonado "recklessly

ordered that inmates be placed in handcuffs from behind during the facility shakedown . . . [and]

has taken no corrective action after learning [he] was injured as a result of being handcuffed for

hours." *Id*. at ¶¶ 30, 33.  He claims that he "would not have been injured without the actions of

the [D]efendants. *Id*. at ¶ 34.  He seeks compensatory and punitive damages. *Id*. at 21.

**Discussion**

Mitchell brings Eighth Amendment claims against Defendants Mclaughlin and Maldonado

for excessive force and deliberate indifference to his health and safety, as well as Fourteenth

Amendment claims against those same Defendants for due process and equal protection

violations.[6]  The Court will address each of these claims in turn.

Personal Involvement (Defendant Maldonado)

As a threshold matter, the Court first concludes that the Corrected TAC fails to adequately

allege Defendant Maldonado's personal involvement in the alleged unconstitutional conduct.  It is

well-settled that a plaintiff seeking monetary damages from a defendant under Section 1983 must

allege facts that establish the personal involvement of that defendant in the alleged constitutional

violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  This is true with respect to supervisory

officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must

plead and prove the elements of the underlying constitutional violation directly against the official

---

[6]  Though Mitchell does not specify whether he brings his claims against Defendants in their individual or official
capacities, he solely seeks monetary damages. *See* Corrected TAC at 21.  The Eleventh Amendment bars a federal
court from holding Department of Correction employees liable in their official capacity for money damages. *See Kelly
v. New York State Unified Ct. Sys.*, 2022 WL 1210665, at *1 (2d Cir. Apr. 25, 2022) (summary order).  Thus, because
Mitchell is solely seeking monetary damages against Defendants, the Court presumes that Mitchell brings his claims
against Defendants in their individual capacities only.

without relying on a special test for supervisory liability" in order to hold a state official liable for damages under Section 1983).

Here, the Corrected TAC does not allege that Mitchell interacted with Defendant Maldonado on the day that he was handcuffed. Rather, Mitchell asserts that Defendant Maldonado was aware that using handcuffs as restraints was unauthorized; that she recklessly ordered inmates to be handcuffed from behind during the shakedown; and that she took no corrective action after learning Mitchell was injured. Corrected TAC at ¶¶ 29–30, 33. And although Mitchell claims that Defendant Maldonado ordered the inmates to be placed in handcuffs from behind, he provides no support for these threadbare allegations, and in fact, further claims that it was Defendant Mclaughlin who had ordered all inmates to be handcuffed from behind. *See* Corrected TAC at ¶ 3. Moreover, Mitchell does not allege Defendant Maldonado was present when he was handcuffed, or that she was even aware that Mitchell was handcuffed in the dayroom for over three hours until after the fact. *See Tangreti*, 983 F.3d at 620. Thus, Mitchell fails to plausibly allege that Defendant Maldonado was personally involved in any constitutional violation, and accordingly, all claims against Defendant Maldonado are dismissed.

Excessive Force (Eighth Amendment)

Mitchell brings a claim against Defendant Mclaughlin for excessive force in violation of the Eighth Amendment, arising from his handcuffing. *See* Corrected TAC at 20. An Eighth Amendment excessive force claim comprises both a subjective and an objective component. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of contemporary standards of decency and the amount of harm required depends on the nature of the claim. *Id.* at 21. The core judicial inquiry with respect to the objective

component does not concern the relative level of injury sustained but rather, "the nature of the force—specifically, whether it was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Although some degree of injury is usually required, the inmate need not show that he suffered a significant injury to state a claim for use of excessive force. *See id.* at 34 (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). As an objective matter, a *de minimis* use of force is generally insufficient to constitute an Eighth Amendment violation except where that force is of a kind that is "repugnant to the conscience of mankind." *Id.* at 37–38.

The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part of a 'good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9). The extent of an inmate's injuries is one factor that courts may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any effort made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted). Lastly, officers are not only liable when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019).

In the Court's view, Mitchell has sufficiently alleged that he was subjected to an objectively serious use of force. Mitchell claims that he was handcuffed from behind for at least three hours in violation of DOC protocol, and that he thereafter had to be treated by facility nurses with

medication and ice packs daily for approximately one week. Corrected TAC at ¶¶ 12, 15. He also alleges that while being handcuffed from behind for hours, he was in visible pain and his hands turned purple. *Id*. ¶ 5. Moreover, Mitchell alleges that after being transferred to MacDougall CI, he was seen by an orthopedic doctor who advised him that his back injuries were exacerbated from being handcuffed from behind for hours while standing. *Id*. at ¶¶ 27–28. These allegations are sufficient to show that Mitchell suffered some degree of injury and that the nature of the force, *i.e.*, being handcuffed from behind for three hours in violation of DOC protocol, was unreasonable under the circumstances. *See Wilkins*, 559 U.S. at 39.

At this juncture, Mitchell's allegations are also sufficient to satisfy the subjective component of his excessive force claim. "The Second Circuit has recognized that the application of excessively tight handcuffs or restraints '*in excess of what was necessary under the circumstances*' may rise to the level of a constitutional excessive force violation" under the Eighth Amendment. *Mason v. Connecticut Dep't of Corr.*, No. 3:21-CV-1088 (MPS), 2022 WL 19341, at *5 (D. Conn. Jan. 3, 2022) (emphasis added) (quoting *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994)) (even where restraints were justified for a prisoner during transport, material questions of fact existed "whether the risk of escape made it necessary for the defendants to shackle the plaintiff so tightly as to cause severe pain and permanent injury"); *see also Johnson v. Turnbill*, 715 F. App'x 84, 86 (2d Cir. 2018) (summary order) (vacating summary judgment in favor of defendants and remanding where pre-trial detainee brought excessive force claim alleging that he asked defendant "for help after having been restrained in tightened handcuffs for three hours in a holding pen"). Here, Mitchell claims that Defendant Mclaughlin: (1) ordered him to be handcuffed from behind; (2) was told by Mitchell that he was too big to be handcuffed from behind; (3) did

not check on Mitchell in the dayroom, despite knowing that he was standing handcuffed from behind for a considerable amount of time; and (4) was the only supervisor in the unit and controlled the functions and decisions made during the shakedown, including ordering the staff to handcuff Mitchell from behind. Corrected TAC at ¶¶ 3, 8, 38. Mitchell also claims that while he was in the dayroom, the senior officer told him he could not switch his handcuffs to the front "due to avoiding any issues with [D]efendant Mclaughlin." *Id*. at ¶ 5. Lastly, he claims that handcuffing him from behind was not for the purpose of maintaining discipline or security, because he was in a secured room with facility staff; had not been involved in any incidents; was not on any restrictive status; and had not received any type of DOC disciplinary report for at least 15 years. *Id*. at ¶¶ 37, 48. These allegations are sufficient to raise an inference that Defendant Mclaughlin was responsible for ordering Mitchell to be handcuffed from behind for at least three hours; was in the position to intervene and stop Mitchell from being handcuffed; and that there was no legitimate penological purpose for handcuffing Mitchell from behind for three hours. *See, e.g.*, *Gawlik v. Semple*, No. 3:20-CV-564 (SRU), 2021 WL 4430601, at *10 (D. Conn. Sept. 27, 2021) (allowing Eighth Amendment excessive force claim to proceed where plaintiff "suffered relatively minor injuries" but adequately alleged that defendants applied "handcuffs too tightly and bent back his wrists for the very purpose of causing him pain"). Accordingly, the Court will allow Mitchell's Eighth Amendment excessive force claim to proceed against Defendant Mclaughlin for further development.

Deliberate Indifference to Health and Safety (Eighth Amendment)

Mitchell also brings a claim against Defendant Mclaughlin for deliberate indifference to his health and safety. Corrected TAC at 20. To succeed on an Eighth Amendment claim for

deliberate indifference to health and safety, a plaintiff must allege facts showing that: (1) he was confined under conditions that posed a substantial risk of serious harm; and (2) the prison official both knew that the plaintiff faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). Determining a substantial risk of harm depends on the context of the alleged violation. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The question is thus "whether prison officials, acting with deliberate indifference, exposed a prisoner to a 'sufficiently substantial risk of serious damage to his future health . . .'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). As to the subjective element of the claim, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (quotations and citations omitted). A plaintiff must show more than mere negligence. *Id.* at 106. The prison official must have acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Here, regarding the objective component, Mitchell alleges that he was exposed to a serious risk of harm because: (1) he was handcuffed from behind for at least three hours; (2) he complained of his hands turning purple and being in pain; (3) was treated with medication and ice packs daily for approximately one week after being handcuffed; and (4) and his back injuries were exacerbated as a result of being handcuffed from behind for three hours. *See* Corrected TAC at ¶¶ 5, 12, 15, 27–28, 50. As for the subjective component, Mitchell claims that notwithstanding his visible pain

and injuries, Defendant Mclaughlin ordered him to remain handcuffed from behind in the dayroom

for an extended period of time.  On initial review, these allegations are sufficient to raise an

inference that Defendant Mclaughlin was deliberately indifferent to the serious risk of harm to

Mitchell. *See Lewis v. Erfe*, No. 3:17-CV-1764 (VLB), 2020 WL 1531332, at \*\*18–19 (D. Conn.

Mar. 30, 2020) (finding issue of material fact remained as to whether plaintiff's injuries attributed

to restraints constituted objectively serious risk of harm to his health and whether defendants

exhibited deliberate indifference by offering no relief from application of restraints).  As such, the

Court will allow Mitchell's deliberate indifference claim to proceed for further development.

Due Process (Fourteenth Amendment)

Next, Mitchell once again brings a due process claim arising under the Fourteenth

Amendment.  The Fourteenth Amendment includes both a right to "substantive" due process and

to "procedural" due process.[7] *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998).

On initial review of Mitchell's Complaint, the Court dismissed his substantive due process claim

as duplicative of and subsumed by his Eighth Amendment excessive force claim.  *See* IRO at 12.

Indeed, "[a]ny protection that 'substantive due process' affords convicted prisoners against

excessive force is . . . at best redundant of that provided by the Eighth Amendment." *Graham v.

Connor*, 490 U.S. 386, 395 n.10 (1989).  Here, the Court dismisses any substantive due process

claim for the same reason.  As to Mitchell's procedural due process claim, it too was dismissed in

the Court's first IRO because Mitchell did "not allege that the defendants should have afforded

them a hearing or any other protective procedures prior to subjecting them to handcuffing." *See*

---

[7] The standards for pleading a substantive and/or procedural due process claim were set forth in the Court's first IRO. *See* IRO at 12–13.  Insofar as any such claims are again being dismissed, the Court need not reiterate those standards herein.

IRO at 12–13. Again, those same deficiencies are present in the Corrected TAC, which still fails to allege that Mitchell should have been afforded a hearing or any other protective procedures prior to being handcuffed. Therefore, Mitchell's procedural due process claim is dismissed.

Equal Protection (Fourteenth Amendment)

Mitchell further asserts an equal protection claim, alleging that Defendant Mclaughlin treated him "differently from at least two similarly situated persons at [Garner CI] by leaving [him] handcuffed from the behind and different from all other inmates in other [C]onnecticut state facilities. . . ." Corrected TAC at ¶ 20. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To prevail on an equal protection claim, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (internal quotations omitted).

On initial review of Mitchell's Complaint, his equal protection claim was dismissed because he failed to show that Defendant Mclaughlin "intentionally or purposefully treated [him] any differently from other prisoners." *See* IRO at 13–14. Here, Mitchell has once again failed to allege how Defendant Mclaughlin intentionally or purposefully treated him differently than other prisoners. Indeed, Mitchell has not alleged how the other two persons he references were similarly situated, nor does the Corrected TAC allege how Defendant Mclaughlin intentionally or purposefully discriminated against Mitchell. Therefore, Mitchell's equal protection claim is dismissed.

Connecticut Constitution & State Tort Law

Lastly, Mitchell claims that Defendant Mclaughlin violated the Eighth and Fourteenth Amendments of the "[C]onnecticut constitution and state tort laws."  Corrected TAC at 20.

As an initial matter, insofar as Mitchell claims that Defendant Mclaughlin violated state tort laws, such claims are dismissed as vague and conclusory given that Mitchell does not reference which state tort laws were allegedly violated.

Further, to the extent Plaintiff seeks monetary damages under Article First, §§ 8, 9, and 20, the Court declines to exercise supplemental jurisdiction over these claims because they raise novel questions of state law.  *See* 28 U.S.C. § 1367(c)(1) ("district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law").  In *Binnette v. Sabo*, the Connecticut Supreme Court recognized a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution arising from unreasonable search and seizure and unlawful arrest. 244 Conn. 23, 41–47 (1998).  In reaching its decision, the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution."  *Id.* at 47. Here, Mitchell's claims present new contexts for causes of action under the Connecticut Constitution, and because recognizing such a cause of action presents a novel and complex issue of state law, the Court declines to exercise supplemental jurisdiction over the state constitutional claims and dismisses them without prejudice to Mitchell's right to pursue them in state court.  *See Lucas v. Quiros*, No. 3:24-CV-1719 (MPS), 2025 WL 1148576, at *7 (D. Conn. Apr. 18, 2025)

(declining to exercise supplemental jurisdiction over plaintiff's claims under Article First, §§ 1, 7, 8, 9, and 20 of the Connecticut Constitution); *see also Baltas v. Erfe*, No. 3:19-CV-1820 (MPS), 2021 WL 3887591, at *8 (D. Conn. Aug. 31, 2021) (concluding inmate's claims under Article First, §§ 7, 8, 20 presented new and undeveloped issues under state law that were not appropriate for federal jurisdiction); *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) ("There is no established private right of action under the religious discrimination, due process, or equal protection provisions.") (Article First §§ 3, 8, and 20); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (refraining from exercising supplemental jurisdiction over novel and undeveloped state constitutional claims under Article First).  Accordingly, the Court declines to exercise supplemental jurisdiction over Mitchell's state constitutional claims under 28 U.S.C. § 1367(c)(1).

**Conclusion**

For all the foregoing reasons, Mitchell's due process and equal protection claims under the Fourteenth Amendment against Defendant Mclaughlin, as well as any and all claims against Defendant Maldonado and all state law claims, are **DISMISSED**.  The Corrected TAC may **PROCEED** as to Mitchell's claims for excessive force and deliberate indifference to health and safety in violation of the Eighth Amendment against Defendant Mclaughlin in his individual capacity.

Accordingly, the Court enters the following additional orders.

(1) **The Clerk of Court** is directed to TERMINATE Defendant Maldonado.

(2) **The Clerk of Court shall** verify the current work address for Defendant Mclaughlin with the Department of Correction Office of Legal Affairs, mail a waiver of service of process

request packet to Defendant Mclaughlin at the address provided on or before **August 15, 2025**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If Defendant Mclaughlin fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on Defendant Mclaughlin in his individual capacity and Defendant Mclaughlin shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) **The Clerk of Court shall** send Plaintiff a copy of this Order.

(4) **The Clerk of Court shall** send a courtesy copy of the Corrected TAC and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) Defendant Mclaughlin shall file a response to the Corrected TAC, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If Defendant Mclaughlin chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant Mclaughlin may also include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **February 25, 2026**. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed on or before **March 25, 2026.**

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Civil Rule 83.1(d)(1) provides that he MUST notify the court. **Failure to do so may result in the**

**dismissal of the case**.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendant or the attorney for Defendant of his new address.

(10) Plaintiff is encouraged to familiarize himself with the discovery process by reviewing Rules 26 through 37 of the Federal Rules of Civil Procedure.

**SO ORDERED** this 25th day of July 2025 at Bridgeport, Connecticut.

_/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE